Noll's Food Co. v. Commissioner
Noll's Food Co. v. Commissioner
Docket No. 3100-62.
United States Tax Court
T.C. Memo 1964-69; 1964 Tax Ct. Memo LEXIS 266; 23 T.C.M. (CCH) 456; T.C.M. (RIA) 64069; March 17, 1964
*266 Petitioner is a real estate holding company and rented certain properties which it owned to three of its subsidiary corporations for the fiscal year 1958 for a total of $43,200. Petitioner being an accrual taxpayer reported that amount on its income tax return for that year although it did not receive that amount in cash. Severe competition arose in the business of its subsidiaries and in the year 1959 they were all three losing money. Petitioner reduced the rent for 1959 to $21,600 to the three subsidiaries and in a resolution adopted by its board of directors it made the reduction in rentals retroactive to 1958 and forgave $21,600 rentals which had been accrued in income in 1958. Held, the forgiveness in 1959 of 50 percent of the prior year's rentals amounted either to a gift or a contribution to capital by the petitioner to the subsidiaries and in either event is not deductible. John Fred Schlafly, Jr., for the petitioner. Robert F. Cunningham, for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency of $4,459.47 in petitioner's income tax for the taxable year ended December 31, 1956. The deficiency is due to an adjustment of petitioner's taxable income described in the deficiency notice as follows: Adjustments to Taxable Income
Taxable Years Ended
Dec. 31,
Jan. 2,
1956
1960
Taxable income dis-
closed by return
(Loss)
$20,116.72
[26,851.83)
Unallowable deduc-
tions and addi-
tional income: (a) Forgiveness
of rent due from
subsidiaries
21,600.00
$20,116.72
$ (5,251.83)
Additional deductions
and nontaxable
income: (b) Net operat-
ing loss deduc-
tion
5,251.83
Taxable income as
adjusted (Loss)
$14,864.89
$ (5,251.83)
Explanation (a) It has been determined that you are not entitled to a deduction for the forgiveness of prior year's rent, in the amount of $21,600.00, due you from your subsidiaries. (b) The deduction of $26,851.83 claimed as a net operating loss deduction *268 in your Application for Tentative Carryback Adjustment for the year 1956 is disallowed to the extent of $21,600.00 because you have failed to establish that a deduction in excess of $5,251.83 is allowable. Accordingly, your taxable income for 1956 had been adjusted on the basis of a net operating loss deduction in the amount of $5,251.83 attributable to the carryback of a net operating loss arising in fiscal year ended January 2, 1960. The petitioner assigned errors to the determination of the Commissioner as follows: The determination of said deficiency and disallowance in the said Notice of Deficiency is based upon the following error: (a) Error in holding that the adjustment for rentals of $21,600 due to Noll's Food Co. from its money-loosing subsidiaries, Noll's Sales Co., Noll's Baking Co., and Noll's Ice Cream Co., constituted a contribution to the capital of said subsidiaries and not an allowable deduction. (b) Error in holding that the inability of Noll's Food Co. to collect rent of $21,600 due from its said subsidiaries constituted a gratuitous forgiveness of a debt of the type described in Regulations 1.61-12. The petitioner alleges the following facts in support *269 of its assignments of error: (a) Petitioner, a non-operating corporation, owned a bread bakery at 400 Front Street, Alton, Illinois, and an ice cream plant at Third and Langdon Avenues, Alton, Illinois. It leased these properties and office space therein to its subsidiaries, Noll's Baking Co., Noll's Ice Cream Co., and Noll's Sales Co. for annual rent of $21,600, $14,400 and $7,200 respectively. (b) These businesses prospered from 1951 to 1958. Then heavy competition from large outside manufacturers, plus the loss by death (December 1957) of the most experienced officer, caused a sharp decline in volume of sales and substantial operating deficits for the subsidiaries. In 1958 the directors of Noll's Food Co. discussed reducing rentals but took no action because of dissension among the stockholder directors. (c) Early in 1960 the continued decline in volume of sales and income of the subsidiaries made substantial rent reductions a business necessity. Rents were reduced 50% effective for the years 1958 and 1959. These rent reductions totalled $21,600 for each year. (d) During the tax years 1958 and 1959, petitioner Noll's Food Co. made bookkeeping accruals of rent at 100% in *270 the hope that the bread and ice cream businesses of its subsidiaries would reverse and return to their prior profitable operations. These rentals were based on hope and had to be adjusted downward 50% in order to be just and collectible under the economic realities of intense bread and ice cream business competition in the Alton area in 1958, 1959 and 1960. (e) In June, 1960, all the bread manufacturing assets and real estate were sold to a competitor, the Colonial Baking Company of St. Louis, for a net book loss of $57,295.61. Only from the proceeds of this sale were the Noll's Sales Co. and Noll's Baking Co. able to pay the 50% reduced rentals due to the petitioner, Noll's Food Co. Because of inability to find a buyer, the ice cream plant and equipment were not sold. (f) The petitioner's intention in reducing rents was clearly not to make a contribution to the capital of its subsidaries. It was to adjust the rents to what was fair and equitable under the reduced volume of business being done by its tenants and because the rents, before the 50% reduction, could not be collected. (g) The petitioner did not gratuitously forgive debts for rentals, but adjusted the rentals downward *271 by 50% to correspond to the realities of the reduced volume of business done and to what was collectible from its subsidiaries. Findings of Fact A stipulation of facts was filed by the parties to which was attached numerous exhibits and we incorporate the stipulation of facts and the exhibits attached thereto as a part of our Findings of Fact. There was also some oral testimony and some exhibits were introduced in evidence which were not a part of the stipulation of facts. From all this we make the following Findings of Fact: Noll's Food Co., hereinafter referred to as petitioner, is a Delaware corporation having its principal office at Alton, Illinois. It filed its Federal income tax returns for the taxable years ended December 31, 1956, and January 2, 1960, with the district director of internal revenue at Springfield, Illinois. As a result of a reorganization which occurred during the year 1950, petitioner organized, formed, and acquired all of the outstanding capital stock of the following corporations: Noll's Sales Co., Noll's Baking Co., and Noll's Ice Cream Co., hereinafter referred to as Sales, Baking, and Ice Cream, respectively. During the years in issue and at *272 all times material thereto, Sales, Baking, and Ice Cream were wholly owned subsidiaries of petitioner, except during the taxable year ended January 2, 1960, Baking acquired a minority interest in the capital stock of Sales in satisfaction of an open account receivable. Principal offices for Sales, Baking, and Ice Cream during the years in issue and at all times material thereto were located at 400 Front Street, Alton, Illinois. Sales, Baking, and Ice Cream filed their Federal income tax returns for the taxable year ended January 2, 1960, with the district director of internal revenue at Springfield, Illinois. During the years in issue and at all times material thereto, petitioner operated as a real estate holding company which leased its real estate and the improvements thereon to its subsidiaries (Sales, Baking, and Ice Cream) in consideration for rental income. During the years in issue and at all times material thereto, Sales was engaged as a wholesale dealer in bakery and ice cream products, Baking was engaged in the business of manufacturing bakery products, and Ice Cream was engaged in the business of manufacturing ice cream products. During the years in issue and at all *273 times material thereto, including the taxable years ended December 31, 1957, and January 3, 1959 (1958), petitioner and its subsidiaries (Sales, Baking, and Ice Cream) maintained their books and records and filed their Federal income tax returns under the accrual method of accounting. Petitioner's income tax return for the taxable year ended January 3, 1959 (1958), shows gross rental receipts of $44,700. Petitioner's only cash rental income from Sales, Baking, and Ice Cream for the taxable year ended January 3, 1959 (1958), was a cash receipt item for $10,800 as reflected on its rent income ledger account. Petitioner's income tax return for the taxable year ended January 2, 1960 (1959), showed gross rental receipts of $24,825, which amount included rents accrued from Sales, Baking, and Ice Cream in the amounts of $7,200, $10,800, and $3,600, respectively. All of petitioner's rental income from Sales, Baking, and Ice Cream for the taxable year ended January 2, 1960 (1959), consisted of rental income accruals no part of which was paid in cash as reflected on its rent income ledger account. Petitioner's corporation income tax return for the taxable year ended January 2, 1960 (1959), *274 was in accord with petitioner's closing journal entry for the taxable year 1959, which closing journal entry read: To reduce rental of subsidiaries by 1/2 for 1959 and forgive 1/2 of the 1958 rental. Reduction due to their inability to pay. Petitioner took a deduction on its income tax return for the taxable year ended January 2, 1960, designated as "Other Deductions * * * Prior years rent on subsidiaries forgiven 21,600.00." Petitioner's year-end adjusting entries for the taxable years ended January 3, 1959, and January 2, 1960, were prepared by an accounting firm employed by petitioner. On June 18, 1960, petitioner sold the land and buildings located at 400 Front Street, Alton, Illinois, to the Colonial Baking Company. The total selling price of all assets sold by petitioner and its subsidiaries to the Colonial Baking Company in the year 1960 was $250,000. Out of this total amount, $49,547 represents assets sold by Sales, $135,585.75 represents assets sold by Baking, and $64,867.25 represents assets sold by petitioner. The assets located at Third and Langdon Avenues, Alton, Illinois, leased by Ice Cream from petitioner during the years in issue were not sold to the Colonial *275 Baking Company. At the end of the taxable year ended January 2, 1960, petitioner and its subsidiaries reported the following "earned surplus" on their balance sheets attached to the respective Federal income tax returns: Petitioner
$308,138.15
Sales
(8,544.83)
Baking
74,346.84
Ice Cream
14,298.22
All of petitioner's rental income from Sales, Baking, and Ice Cream for the taxable year ended January 2, 1960, consisted of rental income accruals no part of which was paid in cash as reflected on its rent income ledger account identified as Exhibit G in paragraph 10 of the stipulation of facts. The accounts receivable maintained by petitioner for Sales, Baking, and Ice Cream during the taxable years ended January 3, 1959, and January 2, 1960, represent rent receivable accounts. On January 2, 1960, sizeable intercompany accounts appeared on the books of petitioner and its subsidiaries. In order to improve their financial statements, which action was necessary to secure additional financing and credit for itself and its subsidiaries, it was resolved by petitioner at its annual board of directors meeting held on March 23, 1960, to settle all intercompany accounts *276 by the issuance or transfer of capital stock in full satisfaction of the balance due in the intercompany accounts. The balance due in petitioner's rent receivable account (account receivable) from Baking for the taxable year ended January 2, 1960, after year-end adjustments, was fully satisfied by Baking when it transferred a proportionate share of its capital stock in the amount of $10,900 to petitioner. The transfer of this stock to petitioner, as reflected on its books in the taxable year ended January 2, 1960, eliminated the balance in petitioner's rent receivable account due from Baking. During the years in issue and at all times material thereto, Joseph V. Goeken was the president of petitioner. The minutes of a special meeting of the board of directors of Noll's Food Co., Noll's Sales Co., Noll's Baking Co., and Noll's Ice Cream Co. held in March 1960, read as follows: A special meeting of the Directors of Noll's Food Co., and its subsidiaries was held immediately following adjournment of the Directors of the Subsidiaries in their annual meeting. The presence of all the Directors and the stockholders at this meeting constituted a waiver of notice as required by the *277 by-laws. The following Directors of Noll's Food Co. were present: J. V. Goeken, E. V. Seibert, Julia W. Goeken, C. C. Goeken, Virginia F. Goeken, Karl K. Hoagland, Emerson Beets The following Directors of the three Subsidiaries were present: J. V. Goeken, E. V. Seibert, Julia W. Goeken, C. C. Goeken, Virginia F. Goeken The joint meeting was called to order by J. V. Goeken who presided and acted as Chairman. Virginia F. Goeken acted as Secretary of the meeting. The Chairman proceeded with the business at hand without reading the minutes of the previous meeting, with no objection of the other Directors. The matter of rental charged to the three Subsidiaries has been under discussion for quite some time and it has been recognized for some time that a substantial reduction of these rentals was in order. In fact, it was generally agreed that the rentals for the year 1958 be reduced but no action was taken on the matter. It is resolved that the annual rental for the year 1959 for the Noll's Baking Co., Noll's Sales Co., and Noll's Ice Cream Co., be reduced from, $21,600.00, $14,400.00 and $7200.00 to $10,800.00, $7200.00 and $3600.00, respectively. It is further resolved that *278 this reduction in rental be made retroactive to the year 1958 in keeping with the prior general agreement on 1958 rentals. It was mentioned that, at January 2, 1960, intercompany accounts, sizeable in some instances, appeared on the books of the Noll's Food Co. and its subsidiaries and that in order to present more bankable statements for credit purposes, etc., for each individual corporation, consideration should be given to issuance of stock in settlement of these accounts. The principal account involved is an amount of $55,772.24 due by Noll's Sales Co. to Noll's Baking Co. for purchases. After discussion, it was resolved that Noll's Sales Co. issue 500 shares of its capital stock at par value to Noll's Baking Co. thereby reducing the account balance to $5772.24. It was also observed that Noll's Sales Co. had a receivable from Noll's Food Co. of approximately $3500.00 and at the same time also owed Noll's Ice Cream Co. approximately the same amount. Resolved that the liability of Noll's Sales Co. to Noll's Ice Cream Co. be reduced by $3500.00 by application of its accounts receivable from Noll's Food Co. and that corresponding adjustments reflecting the above action be taken *279 on all Corporations affected. After giving effect to the foregoing actions, Noll's Baking Co. and Noll's Ice Cream Co. were indebted to Noll's Food Co. in the amounts of $10,900.00 and $2253.94. Resolved that Noll's Baking Co. and Noll's Ice Cream Co. issue 109 and 22 shares of their Capital stock, respectively, to Noll's Food Co. in settlement of their accounts. J. V. Goeken, the Chairman, moved that the above resolutions and recommendations with regards to rental adjustments and stock transfers be accepted in general, with concurrance [concordance] by the auditors. It was seconded and passed by the Board unanimously. After some lengthy discussion as to the financial condition of the business as a whole, and the competitive situation in general, it was moved by the President that he be authorized to borrow $10,000.00 for the Ice Cream Company, for the purpose in buying the inventory and some machinery of the Massey Dairy Co. of Granite City, Illinois, and for the purpose of carrying the account in a contract to manufacture ice cream for them for one year. At the same time the Board is to concur in approval in buying the assets of Massey Dairy that pertains to their ice cream *280 business as manufacturing only. Mr. Karl Hoagland amended the motion to read "a time limit of April 11, 1961, be set for another joint Directors meeting, for the purpose of determining from further financial statements especially pertaining to the first quarter… to consider selling all or a portion of the business and protect the stockholders interest." This amended motion was passed and unanimously agreed to. Motion was made to adjourn until April 11, 1960, seconded as passed. Virginia F. Goeken, who is the wife of J. V. Goeken, acted as secretary at the board of directors meeting of petitioner and its subsidiaries held on March 23, 1960. Opinion BLACK, Judge: The issue which we have to decide in the instant case is whether the amount of $21,600 which represents the foregiveness by petitioner of one-half of a prior year's rental income from its three subsidiaries constitutes for income tax purposes a business deduction as contended by petitioner or whether such foregiveness of accrued rental income for the prior year constitutes a contribution to capital under section 1.61-12(a), Income Tax Regs., as contended by respondent. We have no issue here *281 as to the deduction of a bad debt - that issue is not raised by the pleadings or the evidence. Section 1.61-12(a) of the regulations states: In general, if a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation to the extent of the principal of the debt. Petitioner's income tax return for its fiscal year ended January 2, 1960, showed a net loss of $26,851.83. In arriving at that net loss petitioner, under the heading of "Other Deductions," has taken a deduction described as "Prior years rent on subsidiaries forgiven 21,600.00." In his determination of the deficiency the Commissioner has disallowed the deduction claimed and reduced the net loss shown on the return by $21,600. Therefore, the carryback loss which he has allowed as a deduction from petitioner's 1956 income is only $5,251.83, instead of the $26,851.83 claimed by petitioner. It should be noted at the outset that respondent did not question the right of petitioner to reduce the rentals charged to its subsidiaries for *282 the current fiscal year 1959. Petitioner reduced the rentals charged its subsidiaries for the fiscal year ended January 2, 1960, by 50 percent, or $21,600, and that is all the rentals which petitioner accrued for that year. But respondent does question the right of petitioner to forgive 50 percent of the rentals for the prior fiscal year and take as a deduction the rentals thus forgiven amounting to $21,600. The respondent contends that there is no provision in the statute which authorized such a deduction. Respondent calls attention to section 1.61-12(a), Income Tax Regs., which we have already quoted and which treats generally such a forgiveness as a capital contribution to its subsidiaries. Again we call attention to the fact that petitioner is not contending that it is entitled to take the $21,600 thus forgiven as a bad debt deduction. The record would not support such a deduction even if petitioner did so contend. While the evidence shows that the subsidiaries were operating at losses because of severe competition which had arisen from their competitors, it does not show that they were insolvent. Thus, it seems to us that respondent should be sustained *283 in his determination that the forgiveness of 50 percent of the amount accrued as rentals from its subsidiaries in the prior year should be treated as a capital contribution. We know of no statute which would permit its deduction as a business expense or as a loss in its fiscal year ended January 2, 1960. We, therefore, conclude that the forgiveness of a part of the rentals which petitioner had accrued in its fiscal year ended January 3, 1959 (prior year to fiscal year ended Jaeuary 2, 1960), as rentals due from its subsidiaries, without any consideration therefor, amounted to a gratuitous forgiveness of debts which results in a contribution to the capital of its subsidiaries and was not a business deduction. Cf. Helvering v. American Dental Co., 318 U.S. 322 (1943). The Supreme Court, in the concluding part of its Opinion in that case, said: The fact that the motives leading to the cancellations were those of business or even selfish, if it be true, is not significant. The forgiveness was gratuitous, a release of something to the debtor for nothing, and sufficient to make the cancellation here gifts within the statute. See also Leo Perlman, 27 T.C. 755 (1957), *284 affd. 252 F. 2d 890 (C.A. 2, 1958). We sustain respondent in his contention that the forgiveness by petitioner in its taxable year 1959 which ended January 2, 1960, of 50 percent of the rents accrued against petitioner's subsidiaries in the prior year was not a deductible business expense but was either a gift or a contribution to capital and in either event was not deductible. Petitioner was the sole stockholder of all three of the corporations whose rental obligations accrued in 1958 but were forgiven in 1959 to the extent of 50 percent, and therefore it is not entitled to the deduction which it seeks. Decision will be entered for the respondent.